United States District Court
Middle District of Florida
Tampa Division

**DONNA M. HARBIN,**

    *Plaintiff,*

v.                                                                 **NO. 8:19-cv-1088-T-30PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

## Report and Recommendation

Donna Harbin was born in 1953. She finished high school and cosmetology school, worked as a hairdresser, and owned a hair salon. In an application for disability insurance benefits, she claimed she could not work after 2012 because her one good eye had suffered consecutive retinal tears that year, rendering her legally blind.[1] After two administrative hearings, an Administrative Law Judge ("ALJ") issued a decision denying her application. Tr. 33–38. Now, under 42 U.S.C. § 405(g), she seeks vacatur of the decision and remand for further administrative proceedings.[2] Doc. 21. The Commissioner seeks affirmance of the decision. Doc. 22.

---

[1] During the administrative proceedings, Harbin explained her right eye had been her "bad eye" and always uncorrectable and she thus had used her left eye to do "everything," but in 2012, the retina in her left eye tore, and then two weeks later tore again, rendering her left eye "actually worse" than her right eye. Tr. 49. She said contacts make objects appear a "little bit clearer" but also make her vision "too bright and foggy" and, regardless, things always appear blurry or "smoky." Tr. 52–53.

[2] The final step of the administrative process is an appeal to the Appeals Council. 20 C.F.R. §§ 404.967−404.982. If the Appeals Council denies review, the claimant may file an action in federal district court, and the ALJ's decision is the final decision under review. 20 C.F.R. §§ 404.900, 404.901, 404.981. Here, Harbin proceeded through the administrative process, and the Appeals Counsel denied review, Tr. 1–6, making the ALJ's decision the final decision under review.

A court's review of an ALJ's decision denying an application for disability insurance benefits is limited to whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). If the ALJ fails to apply the correct law or fails to provide enough reasoning for determining that the "proper legal analysis has been conducted," the court must reverse. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Harbin makes three arguments for vacatur and remand. Doc. 21 at 3–9. One has merit; one is without merit; and one need not be decided. For context, the arguments are explained after background.

For a claimant to be "entitled to any benefits based upon disability or blindness," the claimant "must be disabled or blind as defined in title II of the Social Security Act." 20 C.F.R. § 404.1501. The definition provides:

> [T]he term "disability" means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, or (B) blindness; and the term "blindness" means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposes of this paragraph as having a central visual acuity of 20/200 or less.

42 U.S.C. § 416(i)(1).[3] Thus, a claimant may establish disability based on any mental or physical impairment or based solely on blindness, and a claimant may establish

---

[3]Social security regulations incorporate the statutory definition. *See* 20 C.F.R. § 404.1581 ("We will consider you blind under the law for a period of disability and for payment of disability insurance benefits if we determine that you are statutorily blind. Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less."); 20 C.F.R. Part

blindness by showing her better eye, with a correcting lens, has either central visual acuity of 20/200 or less or, *alternatively*, a fields-of-vision limitation "such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." *Id.*

"There are different rules for determining disability for individuals who are statutorily blind." 20 C.F.R. § 404.1505(b). The Program Operations Manual System ("POMS") used by the Social Security Administration includes guidance for determining disability in statutory blindness cases. *See* POMS DI 260 ("Subchapter List for Statutory Blindness Cases – Development, Evaluation and Processing Issues").

Provisions in the POMS and a Social Security Ruling address how the Social Security Administration measures visual fields for the alternative definition of blindness. *See* POMS DI 34001.012A6 ("We generally need visual field testing when you have a visual disorder that could result in visual field loss … or when you display behaviors that suggest a visual field loss. When we need to measure the extent of your visual field loss, we use visual field testing (also referred to as perimetry) carried out using automated static threshold perimetry performed on an acceptable perimeter. (For perimeter requirements, see 2.00A9.)"); SSR 07-01p ("[W]hen we need to measure the extent of visual field loss, we will use visual field measurements obtained with an automated static threshold perimetry test that satisfies our requirements.").

Unlike most social security cases, this is a statutory blindness case. Harbin can obtain disability insurance benefits only if she met the definition of blindness by

---

404, Subpart P, App'x 1, § 2.00A(2)(c) ("You have statutory blindness only if your visual disorder meets the criteria of 2.02 or 2.03A."); *id.* at § 2.02 ("Loss of central visual acuity. Remaining vision in the better eye after best correction is 20/200 or less."); *id.* at 2.03A ("Contraction of the visual field in the better eye, with: A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees.").

3

December 31, 2018.[4] Tr. 35. The ALJ conducted two administrative hearings because, during the first hearing, the ALJ was confused on this point.[5] *See* Tr. 67–71. That Harbin was unrepresented before the ALJ did not help.[6]

The record shows central visual acuity in Harbin's better eye—her left eye—with a correcting lens is not 20/200 or less. *See* Tr. 332 (treatment notes from 2018 visit showing best-corrected central visual acuity in Harbin's right eye is 20/200 and left eye is 20/80). Thus, the record shows Harbin could not have established blindness under the primary definition of blindness.

The record appears devoid of measurements from an acceptable test to determine whether Harbin's better eye nevertheless satisfies the alternative definition of blindness, i.e., "is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20

---

[4]The ALJ found Harbin is insured through December 31, 2018, for blindness but otherwise through only September 30, 2004. Tr. 35. Neither she nor the Commissioner challenge that finding. Because she was insured only for blindness after December 31, 2012 (the alleged onset date), she could obtain benefits only if the ALJ found she met the Act's definition of blindness. *See* 20 C.F.R. § 404.130(e) (discussing rules for determining insured status, including for blindness). The POMS instructs adjudicators, "When the claimant is fully insured for blindness only … [m]ake a determination on the issue of statutory blindness only. Do not consider other impairments." POMS DI 26001.015A1.

[5]At the first hearing, the ALJ explained the standard for disability based on any impairment—not on blindness—, and the ALJ stated that Harbin had to meet that standard by December 31, 2018. Tr. 67. After probing Harbin about her work history, the ALJ reviewed Harbin's certified earnings reports and observed they "actually" show Harbin was insured only until "September of 2004." Tr. 69. The ALJ continued, "So, based upon that, there's—if that is correct information, there's no period of issue before me because your alleged onset date is December of 2012." Tr. 69. The ALJ went "off the record" to determine whether she possessed "jurisdiction over the timeframe." Tr. 70–71. At the second hearing, the ALJ clarified the matter. Tr. 47–48, 55–57.

[6]The ALJ explained Harbin's right to be represented, Harbin expressly waived the right, and the ALJ accepted the waiver and proceeded. Tr. 45–46, 63–64. Harbin raises no issue regarding the waiver or absence of representation.

4

degrees." *See* 42 U.S.C. § 416(i)(1) (quoted). Thus, the record appears devoid of evidence to establish blindness under the alternative definition of blindness.

The record includes evidence that Harbin has problems with, or complained about, her fields of vision. Asked to describe "contraction of peripheral visual fields in the better eye," Harbin's treating optometrist—Kurt Theodore, O.D.—wrote, "reduced, difficult to quantify." Tr. 332. Asked about Harbin's visual limitations in a competitive work situation, Dr. Theodore opined she could "rarely" perform work involving "field of vision." Tr. 332. Harbin herself testified she has "no peripheral" vision, Tr. 50, and had not driven in six months because, "I can't see, I can't see any peripheral, I have no, I can't see, like, I'd have to do this turn. I can't see anything from the side of me," Tr. 52.[7]

At the first administrative hearing, at the second administrative hearing, and in the decision under review, the ALJ set forth the definition of disability based on any impairment, i.e., "the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* Tr. 33–34, 47–48, 67; 42 U.S.C. § 416(i)(1) (quoted).

But the ALJ never set forth the only pertinent definition of disability, i.e., "the term 'disability' [also] means … (B) blindness; and the term 'blindness' means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be

---

[7]The record appears to include normal results from visual field screening tests. *See* Tr. 77, 87, 329, 330; *see* POMS 34001.012A6f ("We will not use the results of visual field screening tests, such as confrontation tests, tangent screen tests, or automated static screening tests.").

5

considered for purposes of this paragraph as having a central visual acuity of 20/200 or less." *See id.* (quoted).

Without mention of the definition of blindness, the ALJ stopped at step two of the five-step sequential process,[8] finding Harbin had no severe impairment or combination of impairments, i.e., no "impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months," Tr. 36, and further finding Harbin's "loss of visual acuity caused no more than minimal limitations in [her] ability to perform basic work activity,"[9] Tr. 38.

The ALJ based those findings on the evidence that Harbin had "best corrected visual acuity of the right eye of 20/200 and best corrected visual acuity of the left eye of 20/80." Tr. 37–38. The ALJ used that same evidence to also (1) give little weight to the opinion of Reuben Brigety, M.D.—a state agency medical consultant—that Harbin's loss of visual acuity is severe, (2) give little weight to Dr. Theodore's opinion that Harbin's "ability to do visual tasks [is] severely reduced," and (3) find Harbin's

---

[8]The Social Security Administration uses a five-step sequential process to decide if a person is disabled, asking (1) whether she is engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment or combination of impairments meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether she can perform any of her past relevant work given her residual functional capacity ("RFC"); and (5) whether there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

[9]The POMS explains that where, as here, a claimant alleges she has a visual impairment but does not meet disability-insurance-benefits insured status, the adjudicator "can decide this type of case on the basis of lack of severity … because the only issue involves the legal definition of blindness. Even though the claimant may be severely disabled, visually or otherwise, the fully insured provision applies only to statutory blindness. It is not necessary to evaluate the claimant's impairment beyond this point. The claimant's visual impairment either meets or does not meet the legal definition of blindness." POMS DI 26010.055A3. Thus, the POMS assumes the adjudicator will apply the definition of blindness in the severity assessment.

6

testimony about the severity of her vision problems "inconsistent" with the medical record. Tr. 37–38.

With that background, the undersigned turns to the meritorious argument Harbin makes. She argues the ALJ erred by failing to develop the record to determine whether she is blind under the alternative definition of blindness; i.e., whether her left eye "is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." *See* Doc. 21 at 5–6 ("Issue No. 2"); 42 U.S.C. § 416(i)(1) (quoted).

Unlike a judicial proceeding, a disability proceeding is inquisitorial, not adversarial. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). "The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. Although many agency systems of adjudication are based to a significant extent on the judicial model of decisionmaking, the [Social Security Administration] is perhaps the best example of an agency that is not." *Sims v. Apfel*, 530 U.S. 103, 110 (2000) (internal quotation marks and quoted authority omitted).

A claimant has the burden of proving she is disabled and therefore is responsible for producing evidence supporting her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir 2003). Still, because a disability proceeding is inquisitorial, an ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. "Thus, the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore all relevant facts."[10] *Washington*, 906 F.3d at 1364 (internal quotation marks and quoted authority omitted). Without full and fair development of the record, "[i]t is impossible to review whether the ALJ's

---

[10]An ALJ's investigatory responsibilities are higher where the claimant is unrepresented and has not waived her right to representation. *Brown v. Shalala,* 44 F.3d 931, 934–35 (11th Cir. 1995). Here, Harbin waived her right to representation, and neither side contends the ALJ had heightened responsibilities.

decision is supported by substantial evidence." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015).

"[W]here the record reveals evidentiary gaps which result in unfairness or clear prejudice," remand "for further factual development of the record before the ALJ is appropriate." *Washington*, 906 F.3d at 1358 (quoted authority omitted); *see, e.g., Henry*, 802 F.3d at 1269–70 (remanding because the ALJ failed to develop the record on the claimant's vision limitations; "The underdeveloped record presents evidentiary gaps that make assessment of [the claimant's] … limitations unfair and clearly prejudicial."); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (remanding because the ALJ failed to develop the record on the duties and physical demands of the claimant's past work).

One way an ALJ can develop the record is by ordering a consultative exam. 20 C.F.R. § 404.1519. An ALJ may order a consultative exam where the "evidence as a whole is insufficient to allow … a determination or decision" on a claim. 20 C.F.R. § 404.1519a(b). But if the record contains enough evidence for the ALJ to make an "informed decision," the ALJ need not order a consultative examination. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, the matter pared down to whether Harbin met the definition of blindness, and that issue pared down to whether her left eye had central visual acuity of 20/200 or less or, *alternatively*, "[was] accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." *See* 42 U.S.C. § 416(i)(1) (quoted). As an apparent result of failing to state or appreciate the full the definition of blindness, the ALJ failed to develop the record to decide whether Harbin's left eye "[was] accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." The resulting "underdeveloped" record had an evidentiary gap—no acceptable test to determine if Harbin met the alternative definition of blindness—that made an informed assessment of blindness impossible,

resulting in unfairness. *See Henry*, 802 F.3d at 1270 (quoted). Remand to develop the record is warranted. *See Agee v. Berryhill*, No. 2:17-CV-358-SRW, 2018 WL 4635687, at *6–7 (M.D. Ala. Sept. 27, 2018) (unpublished) (remanding under similar circumstances).

The Commissioner argues Harbin only speculates that further development of the record might produce evidence to show she met the definition of blindness. Doc. 22 at 8. That argument is unconvincing considering that the only additional proof of blindness will be measures from a test the SSA will use to determine the extent of Harbin's visual field loss in her left eye. *See* SSR 07-01p; POMS DI 34001.012A6. That the record includes evidence of more than minimal visual-field loss, including from Harbin's treating optometrist, suffices.

Harbin's unmeritorious argument is that the ALJ erred by failing to consider additional equivalencies for blindness. *See* Doc. 21 at 7–10 ("Issue No. 3"). As the Commissioner explains, the equivalencies Harbin wants the ALJ to use do not correspond to the statutory definition of blindness, which is the only means by which Harbin can qualify for disability insurance benefits. *See* Doc. 22 at 9–10; *Adams v. Bowen*, 872 F.2d 926, 928–29 (9th Cir. 1989) (holding statutory definition of blindness is clear and should be read and applied literally without use of equivalencies).

Considering remand, the Court need not consider the only other argument Harbin makes: that substantial evidence does not support the ALJ's finding that her visual impairment is not severe. *See* Doc. 21 at 3–5 ("Issue No. 1"). In any event, to the extent the ALJ did not use the definition of blindness to make that finding, the ALJ erred.

The undersigned recommends:

(1)    **vacating** the Commissioner's decision;

(2) **remanding** the case to: (a) fully develop the record regarding whether Harbin is statutorily blind; (b) consider whether Harbin met the definition of statutory blindness by December 31, 2018; and (c) take any other necessary action; and

(3) **directing** the Clerk of Court to: (a) enter judgment for Donna M. Harbin and against the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g); and (b) close the file.[11]

**Done** in Jacksonville, Florida, on July 31, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: The Honorable James S. Moody, Jr.
Counsel of record

---

[11] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive matter], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; Local Rule 6.02.